Michael Buschbacher (*pro hac vice*)
James R. Conde (*pro hac vice*)
Laura B. Ruppalt (*pro hac vice*)
Boyden Gray PLLC
801 17th Street NW, Suite 350
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com

Eric Grant (Bar No. 151064)
Hicks Thomas LLP
701 University Avenue, Suite 106
Sacramento, California 95825
(916) 241-8414
grant@hicks-thomas.com

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE; and ASSOCIATED EQUIPMENT DISTRIBUTORS, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and ROB BONTA, in his official capacity as the Attorney General of the State of California, <br><br> Defendants. | No. 2:24-cv-00988-TLN-CKD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br><br><br><br><br><br><br> Date:　　September 5, 2024 <br> Time:　　2:00 p.m. <br> Courtroom: 2 (15th Floor) <br> Judge:　　Hon. Troy L. Nunley |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

LEGAL STANDARD ...................................................................................................... 2

ARGUMENT ................................................................................................................... 3

I.   Plaintiffs have standing ......................................................................................... 3

     A.   Plaintiffs have associational standing ........................................................ 3

     B.   Plaintiffs need not identify individual members in the
          Complaint ..................................................................................................... 4

II.  Plaintiffs' Clean Air Act claim is justiciable ....................................................... 5

     A.   This Court has subject-matter jurisdiction ................................................. 5

     B.   Plaintiffs' Clean Air Act claim is ripe ....................................................... 5

     C.   The Rules are preempted by Section 209(a) and are void
          *ab initio* ...................................................................................................... 8

     D.   California's footnote about "facial" challenges is improper
          and wrong ....................................................................................................10

     E.   The certification requirement is preempted by the Clean
          Air Act .........................................................................................................11

III. Plaintiffs state an EISA preemption claim ...........................................................12

     A.   EISA preempts the high-priority fleet and drayage rules ...........................12

     B.   EISA does not "disavow" implied preemption ...........................................14

IV.  Plaintiffs state an F4A preemption claim ............................................................16

     A.   The Rules have significant effects on prices, routes, and services.................17

     B.   California's other objections to Plaintiffs' F4A claim lack merit...................19

V.   The Attorney General is a proper defendant .........................................................20

VI.  If necessary, leave to amend should be granted ....................................................20

CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allway Taxi, Inc v. City of New York,*
    340 F. Supp. 1120 (S.D.N.Y. 1972) ............................................................ 7

*Am. Trucking Ass'ns v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ......................................................... 16, 18

*Ammex, Inc. v. Wenk,*
    936 F.3d 355 (6th Cir. 2019) ..................................................................... 5

*Arizona v. United States,*
    567 U.S. 387 (2012) .................................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 2

*Ass'n of Irritated Residents v. EPA,*
    10 F.4th 937 (9th Cir. 2021) ................................................................5, 6

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ..................................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................ 2

*Bennett v. Spear,*
    520 U.S. 154 (1997) ..............................................................................2, 3

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ................................................................20

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ................................................................. 2

*Cal. Trucking Ass'n v. Bonta,*
    996 F.3d 644 (9th Cir. 2021) ..................................................................18

*Cal. Trucking Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
    2023 WL9622548 (C.D. Cal. Dec. 14, 2023) ..........................................19

*Cal. Trucking Ass'n v. Su,*
    903 F.3d 953 (9th Cir. 2018) ..................................................................18

*California Dump Truck Owners Ass'n v. Nichols,*
    2012 WL273162 (E.D. Cal. Jan. 30, 2012) .............................................19

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998) ................................................................18

*Chamber of Commerce v. Whiting,*
   563 U.S. 582 (2011) ................................................................................10

*Citizens United v. FEC,*
   558 U.S. 310 (2010) ..........................................................................10, 19

*City & Cnty. of San Francisco v. Garland,*
   42 F.4th 1078 (9th Cir. 2022) ................................................................. 5

*City & Cnty. of San Francisco v. USCIS,*
   944 F.3d 773 (9th Cir. 2019) ................................................................. 4

*City of Emeryville v. Robinson,*
   621 F.3d 1251 (9th Cir. 2010) ................................................................10

*Club Madonna Inc. v. City of Mia. Beach,*
   42 F.4th 1231 (11th Cir. 2022) ..............................................................10

*Collins v. Yellen,*
   594 U.S. 220 (2021) ................................................................................ 8

*Dent v. NFL,*
   968 F.3d 1126 (9th Cir. 2020) ................................................................ 2

*Dilts v. Penske Logistics, LLC,*
   769 F.3d 637 (9th Cir. 2014) ................................................................19

*Dixon v. United States,*
   381 U.S. 68 (1965) ................................................................................ 8

*Edelman v. Jordan,*
   415 U.S. 651 (1974) ................................................................................ 8

*Elim Church of God v. Harris,*
   722 F.3d 1137 (9th Cir. 2013) ................................................................ 8

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
   541 U.S. 246 (2004) ................................................................................ 5

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) ................................................................................ 3

*FDA v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) ..........................................................................15, 19

*Fleck & Assocs., Inc. v. City of Phoenix,*
   471 F.3d 1100 (9th Cir. 2006) ................................................................ 3

*Geier v. Am. Honda Motor Co.,*
   529 U.S. 861 (2000) ..........................................................................13, 15

*Geo Grp., Inc. v. Newsom,*
   50 F.4th 745 (9th Cir. 2022) ................................................................16

*Howell v. Howell,*
    581 U.S. 214 (2017) ................................................................................... 12

*Hunt v. Wash. State Apple Advertising Comm'n,*
    432 U.S. 333 (1977) ..................................................................................... 4

*Int'l Bhd. of Teamsters v. U.S. DOT,*
    861 F.3d 944 (9th Cir. 2017) ....................................................................... 4

*Law v. Siegel,*
    571 U.S. 415 (2014) ................................................................................... 19

*League of Women Voters of Ind., Inc. v. Sullivan,*
    5 F.4th 714 (7th Cir. 2021) ........................................................................ 10

*Legal Env't Assistance Found., Inc. v. EPA,*
    118 F.3d 1467 (11th Cir. 1997) .................................................................... 8

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ........................................................................... 9, 10

*Loughrin v. United States,*
    573 U.S. 351 (2014) ..................................................................................... 9

*Lozano v. City of Hazelton,*
    724 F.3d 297 (3d Cir. 2013) ...................................................................... 10

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ................................................................................... 15

*Mecinas v. Hobbs,*
    30 F.4th 890 (9th Cir. 2022) ........................................................................ 3

*Mont. Shooting Sports Ass'n v. Holder,*
    727 F.3d 975 (9th Cir. 2013) ....................................................................... 3

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ................................................................................... 17

*Morton v. Mancari,*
    417 U.S. 535 (1974) ..................................................................................... 9

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) .................................................................. 4, 5

*OSU Student All. v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) ..................................................................... 3

*Peloza v. Capistrano Unified Sch. Dist.,*
    37 F.3d 517 (9th Cir. 1994) ....................................................................... 18

*PLIVA, Inc. v. Mensing,*
    564 U.S. 604 (2011) ................................................................................... 16

*Puente Ariz. v. Arpaio,*
    821 F.3d 1098 (9th Cir. 2016) ................................................................10

*Rowe v. N.H. Motor Transp. Ass'n,*
    552 U.S. 364 (2008) ........................................................1, 16, 17, 18

*SEC v. Sloan,*
    436 US. 103 (1978)..............................................................................9

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................4

*Thomas v. Anchorage Equal Rts. Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ..............................................................6

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)............................................................................15

*TVA v. Hill,*
    437 U.S. 153 (1978)......................................................................9, 15

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ............................................................................6

*United States v. Salerno,*
    481 U.S. 739 (1987) ....................................................................10, 11

*United States v. Sup. Ct. of N.M.,*
    839 F.3d 888 (10th Cir. 2016) ............................................................10

*United States v. Washington,*
    872 F.2d 874 (9th Cir. 1989) ..............................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
    959 F.3d 1201 (9th Cir. 2020) ......................................................13, 14

*West Virginia v. EPA,*
    597 U.S. 697 (2022)............................................................................7

**Statutes**

28 U.S.C. § 1331.................................................................................5

33 U.S.C. § 2718(a)(1) .......................................................................14

42 U.S.C. § 7543(a) ....................................................................*passim*

42 U.S.C. § 7543(b) ...................................................................5, 8, 19

42 U.S.C. § 7543(e)(1) .......................................................................10

42 U.S.C. § 7543(e)(2)(A) ....................................................................9

42 U.S.C. § 7545(o) ...........................................................................13

42 U.S.C. § 7607 ................................................................................................. 5

42 U.S.C. § 7607(b)(1) ...................................................................................... 5

42 U.S.C. § 16062 .............................................................................................13

42 U.S.C. § 17002 .............................................................................................14

42 U.S.C. § 17011 .............................................................................................13

42 U.S.C. §§ 17031–35 .....................................................................................13

49 U.S.C. § 14501(c)(1) ......................................................................... 1, 16, 19

49 U.S.C. § 32901(a)(10) ..................................................................................14

49 U.S.C. § 32901(a)(11) ..................................................................................14

49 U.S.C. § 32902(a) .........................................................................................14

49 U.S.C. § 32902(k)(2) ........................................................... 1, 12, 13, 14, 15

52 U.S.C. § 10304 ............................................................................................. 6

Cal. Gov. Code § 26500 .....................................................................................20

Cal. Health & Safety Code § 39674 ...................................................................20

Cal. Health & Safety Code § 42400 ...................................................................20

Cal. Health & Safety Code § 42400.1 ................................................................20

Cal. Health & Safety Code § 42400.2 ................................................................20

Cal. Health & Safety Code § 42402.2 ................................................................20

Cal. Health & Safety Code § 42403(a) ...............................................................20

Pub. L. No. 96-296, §§ 2–3, 94 Stat. 793 (1980) ..............................................16

Pub. L. No. 110-140, 121 Stat. 1492 (2007) ............................................... 13, 14

Pub. L. No. 117-169, § 60105(g), 136 Stat. 1818 (2022) ...................................15

**Regulations**

40 C.F.R. § 1074.101(a) ..................................................................................... 9

49 C.F.R. Part 535 ............................................................................................14

49 C.F.R. § 535.3(d)(7) .....................................................................................14

49 C.F.R. § 535.5 ..............................................................................................13

49 C.F.R. § 535.5(a) ..........................................................................................14

49 C.F.R. § 535.6(a)(3) ................................................................................12

49 C.F.R. § 535.6(a)(3)(iii) ......................................................................12, 14

49 C.F.R. § 535.6(d)(2)(iv) ...........................................................................14

49 C.F.R. § 535.7(a)(1)(iii) ...........................................................................14

49 C.F.R. § 535.7(f)(1) .................................................................................14

Cal. Code Regs. tit. 13, § 1956.8(j)(27) .......................................................14

Cal. Code Regs. tit. 13, § 2014(a) .................................................................19

Cal. Code Regs. tit. 13, § 2014(b) ...........................................................14, 19

Cal. Code Regs. tit. 13, § 2014.1 ...............................................................8, 13

Cal. Code Regs. tit. 13, § 2015(a)(2) ............................................................11

Cal. Code Regs. tit. 13, § 2015(a)(3) ............................................................19

Cal. Code Regs. tit. 13, § 2015(b) ...........................................................14, 19

Cal. Code Regs. tit. 13, § 2015(r) .................................................................11

Cal. Code Regs. tit. 13, § 2015.1 ...........................................................3, 8, 13

Cal. Code Regs. tit. 13, § 2015.2 ...........................................................3, 8, 13

Cal. Code Regs. tit. 13, § 2015.4.....................................................................3

Cal. Code Regs. tit. 13, § 2015.6 ..................................................................20

**Federal Register**

88 Fed. Reg. 20,688 (Apr. 6, 2023)...............................................................11

89 Fed. Reg. 52,540 (June 24, 2024)..............................................................14

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(a)(2)...................................................................................17

Fed. R. Civ. P. 15(a)(2)..................................................................................20

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2................................................................................16

Cal. Const. art. V, § 13..................................................................................20

**Other Authorities**

Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225 (2000) .........................................................16

Letter to California Trucking Ass'n (Dec. 27, 2023) .......................................................... 6

**INTRODUCTION**

California's high-priority and drayage fleet rules (Rules) mandate that Plaintiffs' members and many others replace their medium- and heavy-duty internal-combustion vehicles with electric vehicles that are more expensive to purchase; have lower range and payload capacity; and have uncertain lifetimes, maintenance costs, and residual values. The Rules will significantly increase Plaintiffs' members costs, require operating adjustments, and ultimately increase prices for customers. Plaintiffs accordingly filed this suit, seeking relief on three grounds.

*First*, the Rules are preempted by the Clean Air Act, which forbids all states—including California—to "adopt or attempt to enforce" laws "*relating to* the control of emissions from any new motor vehicle." 42 U.S.C. § 7543(a) (emphasis added). That preempts rules that, in purpose or effect, seek to encourage sales of new vehicles with zero tailpipe emissions, as California admits the Rules do. Complaint ¶¶ 199–226 (Dkt. 1).

*Second*, the Rules are separately preempted by the Energy Independence and Security Act (EISA). Under EISA, the National Highway Traffic Safety Administration (NHTSA) sets "maximum feasible" standards to reduce fuel consumption for new medium- and heavy-duty vehicles. 49 U.S.C. § 32902(k)(2). California's Rules require a far more stringent fuel consumption standard for covered fleets than required by NHTSA. This requirement conflicts with federal law: NHTSA sets the maximum feasible standard for reducing fuel use; California lacks authority to second guess that standard. Complaint ¶¶ 228–243.

*Third*, the Rules are preempted by the Federal Aviation Administration Authorization Act (F4A), which prohibits state trucking regulations that are directly or indirectly "related to a price, route, or service of any motor carrier … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008). The Rules are related to "price[s]" because they require motor carriers to use more expensive, lower performance vehicles, which will increase the cost per ton of freight for customers. The Rules are related to "route[s]" because they require carriers to use low-range electric vehicles with burdensome charging needs, which will result in significant changes to

1   carrier routes. And the Rules are related to "service[s]" because they force carriers to satisfy

2   all customer demands with electric vehicles, which limits the freight capacity that carriers can

3   offer and eliminates long-distance express services that electric vehicles cannot support. So,

4   again, the Rules are unlawful. Complaint ¶¶ 245–252.

5         Defendants (collectively, California) have no good answer on the merits. Instead,

6   California seeks to delay judicial review by arguing that this Court lacks jurisdiction because

7   (1) Plaintiffs did not name specific members harmed by the Rules in the Complaint; and (2)

8   California's request for a waiver of preemption under the Clean Air Act somehow strips

9   district courts of jurisdiction or renders this suit premature. But an association's individual

10  members need not be named in a complaint. And California's notion that it may regulate first,

11  ask for permission later, and avoid judicial review for months or even years—all while

12  regulated parties must comply or accrue potentially crushing liability under state law—has no

13  basis in the text of the Clean Air Act or in basic principles of jurisdiction, ripeness, and due

14  process. California's arguments that Plaintiffs' detailed complaint fails to even state a claim

15  under EISA and F4A are likewise meritless.

16                      **LEGAL STANDARD**

17         To survive a motion to dismiss, Plaintiffs must merely *plausibly* allege the elements of

18  their case. *Bennett v. Spear*, 520 U.S. 154, 168 (1997). For standing, at "the pleading stage,

19  general factual allegations of injury … suffice," because a court must "presume that general

20  allegations embrace those specific facts that are necessary to support the claim." *Id.* A court

21  also "must accept as true all material allegations of the complaint and construe the complaint

22  in favor of the complaining party." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th

23  Cir. 2024) (internal quotation marks omitted) (for Rule 12(b)(1) motion); *accord Dent v. NFL*,

24  968 F.3d 1126, 1130 (9th Cir. 2020) (for Rule 12(b)(6) motion). "The plausibility standard is

25  not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather,

26  the complaint merely "must … raise a right to relief above the speculative level." *Bell Atl. Corp.

27  v. Twombly*, 550 U.S. 544, 555 (2007). "All that matters … is that the allegations nudge [the

28  claims] 'across the line from conceivable to plausible.'" *OSU Student All. v. Ray*, 699 F.3d

1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 680).

## ARGUMENT

### I.   Plaintiffs have standing.

#### A.   Plaintiffs have associational standing.

An organization has standing to sue on behalf of its members when "(1) at least one of its members would have standing to sue in his own right, (2) the interests the suit seeks to vindicate are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members." *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105–06 (9th Cir. 2006). Plaintiffs satisfy these requirements.

Plaintiffs have members with their own standing to challenge the high-priority fleet rule. Standing requires (1) an "injury in fact," (2) that is "fairly traceable" to defendant's conduct, and (3) that is "likely" to be redressed by a favorable decision. *Bennett*, 520 U.S. at 167. Members of AmFree and AED own or operate fleets directly regulated by the challenged rule, Complaint ¶¶ 17–18, and so standing is "easy to establish," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). These members must alter their operations and spend money to comply with the rule's "zero-emission" vehicle (ZEV) purchase mandate and related reporting requirements. Cal. Code Regs. tit. 13, §§ 2015.1, 2015.2, 2015.4; Complaint ¶¶ 86, 131, 133–137, 140, 148–161, 175, 248–250; *see also Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) ("Economic injury caused by a proscriptive statute is sufficient for standing to challenge that statute."). Their injuries are caused by the high-priority fleet rule and will be redressed by a judgment in Plaintiffs' favor. *See also* McGuire Declaration.

AED, in particular, also has members with standing to challenge the drayage rule. *Cf. Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) ("[O]nly one plaintiff need have standing for the suit to proceed."). Some AED members or their subsidiaries perform drayage services at California ports and are directly subject to the drayage rule. Complaint ¶ 18; McGuire Declaration ¶ 14; Barlet Declaration ¶¶ 13–14. AED's members also sell, rent, or service internal-combustion medium and heavy-duty equipment, including to drayage fleets. Complaint ¶ 18; McGuire Declaration ¶ 15; Barlet Declaration ¶ 16. By requiring fleets to

convert to ZEVs, the drayage rule decreases demand for members' products and services, causing AED's members economic harm. *Int'l Bhd. of Teamsters v. U.S. DOT*, 861 F.3d 944, 950–51 (9th Cir. 2017) (market distortions that disadvantage plaintiffs cause injury). Reduced demand for internal-combustion equipment and services is not only "predictable, likely, and imminent," *City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773, 787 (9th Cir. 2019)—it is the very purpose of the rule, Complaint ¶ 2. A judgment in Plaintiffs' favor would redress these pocketbook injuries by reducing state-imposed distortions in the market for AED members' products and services.[1]

Plaintiffs also satisfy the second and third requirements for associational standing. AmFree and AED "exist to protect the economic interests of their members," and so they have an obvious interest in the suit. *Int'l Bhd. of Teamsters*, 861 F.3d at 951; *see* Complaint ¶¶ 17–18. And Plaintiffs do not seek money damages, rendering individual member participation unnecessary. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 344 (1977).

**B.    Plaintiffs need not identify individual members in the Complaint.**

California argues that Plaintiffs must allege that "*all* of [their] members are … injured" or identify injured members by name in the Complaint. Motion at 7 (Dkt. 20-1). This argument is foreclosed by binding precedent: the Ninth Circuit has long held that the case on which California relies, *Summers v. Earth Island Inst.*, 555 U.S. 488, 491–92 (2009)—which considered an appeal from a final judgment—does not require "that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization" at the motion to dismiss stage. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Instead, "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury," the organization

---

[1] That the mandates are phased is irrelevant. *See* Motion at 8 (Dkt. 20-1). The Rules compel fleet transformation beyond what the market would otherwise dictate, harming Plaintiffs' members. Complaint ¶¶ 8, 18, 118–177.

1   need not identify injured members in the pleadings. *Id.* Where, as here, plaintiffs plausibly

2   allege that some of their members are injured, and members' names are not needed to

3   understand the claims, "[n]o purpose [would] be served by requiring [plaintiffs] to identify

4   [injured members] by name" in the complaint. *Id.* Regardless, the declaration submitted

5   herewith *does* identify an injured member by name. *See* Barlet Declaration ¶¶ 4, 7–18.

6   **II.     Plaintiffs' Clean Air Act claim is justiciable.**

7          **A.     This Court has subject-matter jurisdiction.**

8          Contrary to California's assertion, *see* Motion at 8, Plaintiffs are not challenging

9   California's request for a waiver under Section 209(b) of the Clean Air Act, 42 U.S.C.

10  § 7543(b). Rather, Plaintiffs claim that the Rules constitute "standard[s] relating to the control

11  of emissions from new motor vehicles" that California is forbidden to "adopt or attempt to

12  enforce" under Section 209(a) of the Act, 42 U.S.C. § 7543(a). *See* Complaint ¶¶ 198–226.

13  Claims under Section 209(a) are within the scope of district courts' federal-question

14  jurisdiction under 28 U.S.C. § 1331. *See, e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt.*

15  *Dist.*, 541 U.S. 246 (2004); Complaint ¶ 13. The special judicial review provision of the Act

16  cited by California applies only to "final action[s] of the [EPA] Administrator." 42 U.S.C.

17  § 7607(b)(1), *cited in* Motion at 8. But this case does not challenge or even question any EPA

18  final action. *Ammex, Inc. v. Wenk*, 936 F.3d 355, 362 & n.7 (6th Cir. 2019) (a lawsuit is not

19  covered by 42 U.S.C. § 7607 unless it "seek[s] to effectively nullify or invalidate a[n] EPA

20  action"). This Court therefore has subject-matter jurisdiction.

21         **B.     Plaintiffs' Clean Air Act claim is ripe.**

22         "Ripeness has both constitutional and prudential components." *City & Cnty. of San*

23  *Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022). Plaintiffs' claim of Clean Air Act

24  preemption satisfies both components. "The constitutional component of ripeness overlaps

25  with the 'injury in fact' analysis for Article III standing, and therefore the inquiry is largely

26  the same: whether the issues presented are 'definite and concrete, not hypothetical or

27  abstract." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (cleaned up). The

28  question is "whether the plaintiffs face a realistic danger of sustaining a direct injury as a result

of the [rule]'s operation or enforcement or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (cleaned up). Plaintiffs' Clean Air Act challenge is constitutionally ripe for the same reasons Plaintiffs have standing: there is nothing imaginary or speculative about the costs and operational changes imposed on Plaintiffs' members. *See supra* Part I.A.

The claim also satisfies prudential ripeness. Prudential ripeness involves "two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Thomas*, 220 F.3d at 1141 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Plaintiffs' preemption claim is "a purely legal question" that "'would not benefit from further factual development'" in an enforcement proceeding. *Ass'n of Irritated Residents*, 10 F.4th at 944 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001)). It is fit for judicial decision now.

Plaintiffs' members also face substantial hardship from delaying review. The Rules are effective as state law now, and California asserts present authority to enforce the Rules. Request for Judicial Notice (RJN), Exhibit C at 19–21 (Dkt. 21-3); RJN, Exhibit D at 1–2 (Dkt. 21-4); Complaint ¶¶ 193–195. California has urged covered entities to comply while its waiver request is pending and has stated its intent to retroactively enforce the Rules from their effective date if a waiver is granted. RJN, Exhibit D at 1–2; Complaint ¶ 195; Letter to California Trucking Ass'n at 1–2 (Dec. 27, 2023), https://perma.cc/ZL4H-RYZF (California "reserves all of its rights to enforce the ACF regulation in full for any period for which a waiver is granted or for which a waiver is determined to be unnecessary" back to "January 1, 2024"). Plaintiffs' members are thus forced to comply with the Rules now or accrue liability. They "need not assume such risks while waiting for [California] to 'drop the hammer' in order to have their day in court." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016).

California's suggestion that the claim is not "ripe" because EPA has not granted a waiver, Motion at 10, is backwards. Section 209, like the nearly contemporaneous Section 5 of the Voting Rights Act, establishes a preclearance regime. *See* 52 U.S.C. § 10304. Preclearance means California must ask for permission first. The claim here is ripe precisely

*because* California has "adopt[ed]" emissions rules that apply *now* without first getting a waiver of preemption from EPA. 42 U.S.C. § 7543(a). Section 209(a) of the Clean Air Act provides in clear terms that this is unlawful: whatever the scope of California's special treatment under the Clean Air Act, it does not authorize the State to regulate first, ask for permission later, and avoid judicial review in the meantime.

Nor can the government strip courts of jurisdiction by appealing to "enforcement discretion" once sued. *See West Virginia v. EPA*, 597 U.S. 697, 720 (2022) ("[V]oluntary cessation does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (internal quotation marks omitted)). California maintains that ACF is binding law *now*, and it "vigorously defends the legality of [its regulate-first-ask-permission-later] approach." *Id.* (internal quotation marks omitted). Plaintiffs disagree, and that dispute is ripe now.

California misleadingly asserts that there is no Section 209(a) controversy because it "*agrees with Plaintiffs*" that it "needs a preemption waiver to enforce the elements of ACF that establish standards for new motor vehicles." Motion at 8–9 (internal quotation marks omitted). But this is a challenge to the Rules, not a waiver decision, and, in any event, California does *not* concede that it needs a waiver. California has told EPA that the Rules are *not* preempted because they do not on their face apply only to new vehicles. RJN, Exhibit C at 19–21 (asserting that the Rules do not establish standards for "new" vehicles because (1) they allow compliance by purchasing used ZEVs and (2) the drayage requirements may be construed as "in-use" regulation); *see also* Complaint ¶¶ 113–116, 204, 210. Plaintiffs disagree: both rules "relat[e] to" emissions standards for "new motor vehicles," 42 U.S.C. § 7543(a), and are thus preempted now. Complaint ¶¶ 199–226 (discussing *Allway Taxi, Inc v. City of New York*, 340 F. Supp. 1120, 1124 (S.D.N.Y.), *aff'd* 468 F.2d 624 (2d Cir. 1972), which was endorsed by EPA and which concluded that indirect attempts to control new vehicle emissions are preempted). This dispute raises a question of law as to the scope of the Clean Air Act's broad preemption provision, Section 209(a). There is thus a ripe controversy for this Court to decide.

**C.     The Rules are preempted by Section 209(a) and are void *ab initio*.**

Section 209(a) forbids states to "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). Section 209(b) provides California a narrow exception to this prohibition if, and only if, EPA first grants California a waiver. *Id.* § 7543(b). Because the Rules relate to the control of new motor vehicle emissions within Section 209(a)'s prohibition, Complaint ¶¶ 199–226, California may not "adopt or attempt to enforce" them unless *and until* EPA grants a waiver.

California, however, simply ignored this prohibition. At the latest, California adopted the Rules on October 1, 2023, when they became effective as state law. *Id.* ¶ 57. At that time, California had not submitted a waiver request for the Rules, much less been granted one. Complaint ¶ 112. Nevertheless, the Rules' deadlines are immediate, requiring fleets to conform now or accrue liability under state law, in the absence of a waiver. Cal. Code Regs. tit. 13, §§ 2014.1, 2015.1, 2015.2.

California's adoption of the Rules as state law without a waiver violates the plain text of Section 209(a). The Rules, "out of harmony with the statute," are thus "a mere nullity." *Dixon v. United States*, 381 U.S. 68, 74 (1965) (internal quotation marks omitted). They are "void *ab initio*" and have no effect. *Legal Env't Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1473 (11th Cir. 1997); *see also Collins v. Yellen*, 594 U.S. 220, 259 (2021) (an unlawful provision "is never really part of the body of governing law" and is "automatically displace[d] … the moment of … enactment"). California cannot cure this defect by asking for a waiver after the fact. And, at the very least, a waiver cannot retroactively authorize requirements that preceded it. *Cf. Elim Church of God v. Harris*, 722 F.3d 1137, 1140–41 (9th Cir. 2013) (retroactivity requires clear congressional authorization). Only this reading gives effect to the word "adopt" in Section 209(a).[2]

---

[2] Plaintiffs do not seek "retroactive relief," Motion at 10 n.6, but rather a declaration that the rules are unlawful and a *prospective* injunction prohibiting California from attempting to enforce the rules against past or future violations, Complaint ¶ 253, the type of equitable relief expressly available in *Ex Parte Young* actions. *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

California resists this straightforward construction, arguing that Section 209(a) permits it to make new vehicle emissions regulations effective as state law before it even *seeks* a waiver. Motion at 9–10. But the authorities cited by California cannot overcome the clear text of Section 209(a). The cited regulation, 40 C.F.R. § 1074.101(a), relates to a *different* provision of the Clean Air Act (Section 209(e)(2)(A), 42 U.S.C. § 7543(e)(2)(A)), which uses *different* text to govern emissions standards for *different* (nonroad) vehicles.[3] *See* Motion at 9–10. And EPA's atextual interpretation is not entitled to deference. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2265 (2024). Nor is it persuasive. Past examples of EPA acquiescence did not involve adoption of transformative requirements with deadlines to comply before a waiver could be granted. And, in any event, California's construction would read the word "adopt" entirely out of Section 209(a), disregarding the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotation marks omitted).

Later amendments to the Clean Air Act do not ratify EPA's practice. That would amount to implied repeal of Section 209(a)'s prohibition on adoption, which is justified only if "the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974). California cites no provision in the 1977 or 1990 amendments that is irreconcilable with a plain reading of Section 209(a)'s text. And there "is no indication that Congress as a whole was aware of [EPA's] position" when it passed the amendments, further undermining implied ratification. *TVA v. Hill*, 437 U.S. 153, 192 (1978). Even so, more than "general awareness" is necessary to presume what "would be tantamount to amendment of … the …

---

[3] In contrast to Section 209(a), Section 209(e)(2)(A) does not forbid states to "adopt *or* attempt to enforce" standards; instead, it permits EPA to "authorize California to adopt *and* enforce" standards for certain nonroad vehicles and engines. 42 U.S.C. § 7543(e)(2)(A) (emphasis added). That difference matters. The "and" in Section 209(e)(2)(A) could plausibly be read conjunctively, so that adoption alone might not require authorization. But the "or" in Section 209(a) is plainly distributive: without a waiver already in hand, California may not "adopt" emissions standards for new motor vehicles, nor may it "attempt to enforce" those standards. In any event, the regulation cited by California, 40 C.F.R. § 1074.101(a), is ambiguous. It is not clear that EPA uses the term "adopted" to refer to nonroad vehicle emissions standards that California has made effective as state law (as California asserts) or to standards adopted by vote of a state agency, which is not the same as codifying the rules as state law.

1  plain meaning of the language of" Section 209(a), *SEC v. Sloan*, 436 US. 103, 121 (1978), and

2  California points to nothing more.[4] "The whole point of having written statutes is that every

3  statute's meaning is fixed at the time of enactment." *Loper Bright*, 144 S. Ct. at 2266 (cleaned

4  up). Today, as when it was enacted in 1967, Section 209(a) prohibits California from

5  "adopt[ing]" regulations relating to new motor vehicle emissions.

6     **D.    California's footnote about "facial" challenges is improper and wrong.**

7        California's assertion that Plaintiffs failed to state a viable "facial" challenge under the

8  Clean Air Act is made in a footnote, *see* Motion at 9 n.5, and so is forfeited, *City of Emeryville*

9  *v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010). In any event, California is wrong: "[t]he

10  distinction" between facial and as-applied challenges "goes to the breadth of the remedy

11  employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558

12  U.S. 310, 331 (2010). Further, even assuming that the distinction matters for pre-enforcement

13  preemption claims, *see Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 & n.6 (9th Cir. 2016) (the

14  distinction's "applicability in preemption cases is not entirely clear"), California's version of

15  the framework for facial preemption challenges has been rejected in case after case.[5]

16        The test for preemption is not whether any hypothetical party could comply with the

17  ────────────────

18  [4] Section 209(e)(1), added in 1990, confirms Plaintiffs' construction. Using the same language
   as in Section 209(a), Section 209(e)(1) forbids states to "adopt or attempt to enforce" standards
19  related to emissions of two categories of new nonroad vehicles and engines (small engines
   used for construction or farming and locomotives or locomotive engines). 42 U.S.C.
20  § 7543(e)(1). These prohibitions may not be waived, *id.* ("[Section 209(b)] shall not apply for
   purposes of this paragraph"), and therefore no state, including California, may "adopt"
21  standards for these new nonroad vehicles and engines. Section 209(e)(2)(A) uses a different
   phrase ("adopt *and* enforce") and thus does not imply ratification either. *See supra* note 3.

22

23  [5] *See, e.g.*, *Club Madonna Inc. v. City of Mia. Beach*, 42 F.4th 1231, 1256–57 (11th Cir. 2022)
   (formulation that allows "[s]tates and municipalities [to] consistently sidestep … the
24  unambiguous command of federal law so long as they crafted some instance when the state
   or municipal law at issue aligned with federal objectives … can't be right"); *League of Women*
25  *Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714, 728–29 (7th Cir. 2021) ("It is always possible to
   imagine something … but that is not what the Supreme Court had in mind in [*United States v.*
26  *Salerno*, 481 U.S. 739 (1987)]."); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 917 (10th Cir.
   2016) ("A facial challenge is best understood as 'a challenge to the terms of the statute, not
27  hypothetical applications.'"); *Lozano v. City of Hazelton*, 724 F.3d 297, 313 n.22 (3d Cir. 2013)
   (rejecting California's formulation in part because the Supreme Court did not apply it in
28  preemption analyses in *Arizona v. United States*, 567 U.S. 387 (2012), or *Chamber of Commerce*
   *v. Whiting*, 563 U.S. 582 (2011)).

1  Rules without triggering a violation of federal law, but whether there is any set of

2  circumstances under which the *Rules themselves* do not conflict with federal law. *United States*

3  *v. Salerno*, 481 U.S. 739, 745 (1987) (question is whether any "set of circumstances exists under

4  which *the Act* would be valid" (emphasis added)). Plaintiffs have alleged facts that show—and

5  California has conceded—that there is not: given the miniscule number of "zero-emission"

6  trucks in the marketplace, under any plausible set of circumstances, the Rules require at least

7  *some* fleets to purchase new ZEVs. Complaint ¶¶ 116, 211, 223–224; Motion at 9 ("[T]here is

8  … no dispute that, at least 'in the first few years of the ACF regulation's implementation,'

9  some regulated fleets will have to acquire new ZEVs in order to comply."). Indeed, the very

10  purpose of the Rules is to mandate demand for new ZEVs. Because the Rules require at least

11  some new ZEV purchases under all plausible circumstances, they are "standard[s] relating to

12  the control of emissions from new motor vehicles" prohibited by Section 209(a), 42 U.S.C.

13  § 7543(a). Whatever label one uses, that claim is properly before the Court.

14  **E.    The certification requirement is preempted by the Clean Air Act.**

15  The high-priority fleet rule's certification requirement is also preempted by Section

16  209(a).[6] That provision requires that any used or new internal-combustion engine trucks

17  added to a fleet be "certified to applicable California emissions standards and emissions

18  related requirements," even if those vehicles are purchased, titled, and registered outside of

19  California. Cal. Code Regs. tit. 13, § 2015(a)(2), (r). Even if one takes California at its word

20  that it will not use this to enforce standards that do not have a waiver, *see* Motion at 11, the

21  problem here remains because the provision expands existing state emission requirements to

22  out-of-state sales. California has no authority to do this: EPA's prior waivers are limited to

23  new *California* vehicles, i.e., vehicles sold in the state. *See, e.g.*, 88 Fed. Reg. 20,688, 20,725

24  (Apr. 6, 2023) (EPA's waiver affects "new heavy-duty vehicles and engines sold in

25

26  _____

27  [6] Contrary to California's assertion, Motion at 11, Plaintiffs have sufficiently alleged injury
from the certification requirement. *See* Complaint ¶¶ 71, 83–92 (under ZEV Milestones option
or when an exemption applies, members must purchase more expensive internal-combustion

28  trucks that meet California standards).

1    California"). California's "attempt to enforce" any of its standards against out-of-state

2    vehicles exceeds the scope of the waivers and violates Section 209(a).

3    **III.    Plaintiffs state an EISA preemption claim.**

4         **A.    EISA preempts the high-priority fleet and drayage rules.**

5         Plaintiffs also have stated a claim of EISA preemption. Plaintiffs allege, with detailed

6    support, that the Rules' ZEV purchase mandates are de facto fuel consumption standards that

7    directly conflict with NHTSA's federal standards for medium- and heavy-duty vehicles.

8    Complaint ¶¶ 227–243. This concrete claim is a far cry from a mere "suggestion that *any*

9    emission regulation could conflict with [EISA] because mandating lower emissions can be

10   'equivalent to' mandating reduced fuel consumption." Motion at 13 (emphasis in original).

11        That the Rules' "zero [carbon] emissions" mandates are equivalent to fuel

12   consumption standards follows directly from basic chemistry: burning a gallon of diesel or

13   gasoline to power a truck directly and inevitably results in carbon-dioxide exhaust emissions,

14   which is why NHTSA measures fuel consumption by measuring carbon emissions.

15   Complaint ¶¶ 233–239; 49 C.F.R. § 535.6(a)(3). NHTSA "[a]ssign[s]" electric vehicles a "fuel

16   consumption … value of zero gallons per 100 miles" for purposes of EISA compliance,

17   because electric vehicles shift fuel consumption entirely upstream, to the power sector. 49

18   C.F.R. § 535.6(a)(3)(iii). The Rules therefore require fleets to purchase, and eventually

19   transition entirely to, vehicles with a fuel consumption of zero gallons per mile.

20        The Rules thus directly conflict with the statutory text and also "stand as an obstacle

21   to [NHTSA's] accomplishment and execution of the purposes and objectives of Congress" in

22   EISA. *Howell v. Howell*, 581 U.S. 214, 222 (2017). Congress directed NHTSA—not

23   California—to set "maximum feasible" fuel economy standards that are "appropriate, cost-

24   effective, and technologically feasible." 49 U.S.C. § 32902(k)(2). NHTSA—not California—

25   has the job of achieving a prescriptive, golden mean: to reduce fuel consumption as far as

26   possible, within the bounds of what is technologically feasible, cost-effective, and generally

27   reasonable for manufacturers and the public. By using the term "maximum" and "str[iking]"

28   a particular balance of interests that would be disturbed or impeded by state regulation,"

1   Congress "made 'a considered judgment' [and] 'a deliberate choice' to preclude state

2   regulation." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d

3   1201, 1212 (9th Cir. 2020) (quoting *Arizona v. United States*, 567 U.S. 387, 405 (2012)).

4         The Rules disturb this federal balance by prescribing fuel consumption requirements

5   that reflect a different policy assessment. In California's view, NHTSA's judgment is wrong:

6   the "maximum feasible" fuel economy that California thinks is "appropriate, cost-effective,

7   and technologically feasible," 49 U.S.C. § 32902(k)(2), is not the federal standard, but rather

8   "zero" gallons of fuel consumed per mile. Cal. Code Regs. tit. 13, §§ 2014.1, 2015.1, 2015.2.

9   Under EISA, however, NHTSA's assessment—not California's—governs.

10        EISA also preempts the Rules because they "presen[t] an obstacle to the variety and

11   mix of [technologies] that [NHTSA's] regulation sought." *Geier v. Am. Honda Motor Co.*, 529

12   U.S. 861, 881 (2000). Other sections of EISA direct technology-specific investments and

13   programs. *See* Pub. L. No. 110-140, § 131, 121 Stat. 1492, 1508–11 (2007), *codified at* 42 U.S.C.

14   § 17011 (electric vehicle program).[7] But 49 U.S.C. § 32902(k)(2) contains no technology

15   prescription. Accordingly, NHTSA has established technology-neutral fuel consumption

16   standards, reflecting a "deliberat[e]" choice to "allo[w] manufacturers to choose among

17   different [technologies] … to satisfy that requirement." *Geier*, 529 U.S. at 878. Moreover,

18   NHTSA's standards are attribute-based, which recognizes that it is significantly harder to

19   reduce the fuel consumption of larger vehicles that carry heavier loads. 49 C.F.R. § 535.5.

20   The Rules, however, impose a single compliance pathway—ZEVs—for all vehicles,

21   regardless of size or capability. These one-size-fits-all mandates pose an obstacle to the market

22   mechanics that NHTSA's technology-neutral standards embrace, and the mandates prevent

23   manufacturers from adopting the most "appropriate, cost-effective" means to achieve

24   "maximum" fuel economy for particular vehicles. 49 U.S.C. § 32902(k)(2).

25

26   [7] *See also, e.g.,* Pub. L. No. 110-140, § 132, 121 Stat. at 1511, *codified at* 42 U.S.C. § 16062
     (manufacturing grants for hybrid and advanced diesel vehicles); *id.* §§ 201–204, 121 Stat. at
27   1519–29, *codified at* 42 U.S.C. § 7545(o) (renewable fuel program); *id.* §§ 221–223, 225–230,
     234, 121 Stat. at 1533–38, *codified at* 42 U.S.C. §§ 17031–35 (biofuels research and
28   development).

1  NHTSA, in fact, already considers ZEVs when setting fuel consumption standards.[8]
2  In its most recent rulemaking, for example, NHTSA stated that it "is allowed to consider
3  electrification in determining maximum feasible standards for [heavy-duty vehicles]" under
4  EISA. 89 Fed. Reg. 52,540, 52,550 (June 24, 2024). Indeed, NHTSA projects that its recent
5  final standards will result in 27 percent of new heavy-duty pickups and vans being electric in
6  2030, increasing to 40 percent in 2038. *Id.* at 52,739, Table V-17 (HDPUV108 alternative).
7  The Rules' 100 percent electrification mandates directly "distur[b]"—and conflict with—this
8  "balance." *In re Volkswagen*, 959 F.3d at 1212.

9      **B.**    **EISA does not "disavow" implied preemption.**

10      Nor does EISA "disavo[w] … implied preemption," as California asserts. Motion at
11  13. The provision cited by California reads:

12      Except to the extent expressly provided in this Act or an amendment made by
    this Act, nothing in this Act or an amendment made by this Act supersedes,
13      limits the authority provided or responsibility conferred by, or authorizes any
    violation of any provision of law (including a regulation), including any energy
14      or environmental law or regulation.

15  Pub. L. No. 110-140, § 3, 121 Stat. at 1498, *codified at* 42 U.S.C. § 17002. This provision says
16  nothing about *preemption* of *state* law, but merely directs that EISA be read in *harmony* with
17  (and not as repealing) then-existing *federal* law. Congress has "demonstrated [in other
18  provisions] that it knows how to select language" to disclaim preemption of state law "if it so
19  intends." *United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989); *see, e.g.*, 33 U.S.C.
20  § 2718(a)(1) ("Nothing in this Act … shall—(1) affect, or be construed or interpreted as

---

22  [8] California's assertion that ZEVs are excluded from EISA, *see* Motion at 13–14, misreads the
23  law. The statutory definitions cited by California, 49 U.S.C. § 32901(a)(10)–(11), relate to
NHTSA's authority to set standards for "automobile[s]" under the CAFE program, *id.*
§§ 32901(a)(11), 32902(a), not NHTSA's authority to set standards for medium- and heavy-
24  duty vehicles under EISA, *id.* § 32902(k)(2). And the regulation cited by California, 49 C.F.R.
§ 535.3(d)(7), states that the "provisions of this part do not apply to *engines* that are not internal
25  combustion engines" (emphasis added). ZEVs are *vehicles*, not *engines*, and other regulations
in Part 535 make clear that ZEVs (electric and fuel cell vehicles, Cal. Code Regs. tit. 13,
26  §§ 1956.8(j)(27), 2014(b), 2015(b)) are included in EISA. *See, e.g.*, 49 C.F.R. § 535.5(a)
(manufacturer's fleet includes electric and fuel cell vehicles); *id.* § 535.6(a)(3)(iii) (assigning
27  fuel consumption of "zero gallons per 100 miles" to electric heavy-duty pickup trucks and
vans); *id.* § 535.6(d)(2)(iv) (same for electric heavy-duty tractors and vocational vehicles); *id.*
28  § 535.7(a)(1)(iii), (f)(1) (incentivizing credits for electric and fuel cell vehicles).

preempting, the authority of any State … from imposing any additional liability or requirements with respect to" certain pollutant discharges). Congress did not do so in this provision. And in any event, construing the provision as a savings clause for state law does not "bar the ordinary working of conflict pre-emption principles," including implied preemption. *Geier*, 529 U.S. at 869.[9]

Nor does applying ordinary preemption principles to EISA "impliedly repea[l] … the [Clean Air Act's] vehicular emission programs." Motion at 13. Regulation of carbon-dioxide emissions under the Clean Air Act and fuel economy standards under EISA necessarily "overlap," and the two schemes must be "administer[ed]" by EPA and NHTSA without "inconsistency." *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007). Accordingly, where federal emissions regulations implicate fuel economy, EPA's and NHTSA's standards must be harmonized. *Id.* EISA therefore did not repeal EPA's authority under the Clean Air Act, but clarified how the agency must wield it: consistent with NHTSA's fuel economy standards. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."). California's regulations, by contrast, are more stringent than, and thus "inconsisten[t]" with, NHTSA's "maximum" standards. *Massachusetts*, 549 U.S. at 532. California's interpretation—that a state may set new vehicle emissions standards that prohibit fuel consumption—would eviscerate EISA and enable states to supersede NHTSA's standards, violating a "cardinal principle of statutory construction" by rendering NHTSA's standard-setting authority in 49 U.S.C. § 32902(k)(2) "superfluous, void, or insignificant" in states covered by California's standards. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

---

[9] California misconstrues the Inflation Reduction Act's (IRA's) funding for state "zero-emission" efforts, Pub. L. No. 117-169, § 60105(g), 136 Stat. 1818, 2068–69 (2022), as "express" endorsement of California's Rules. Motion at 12. The IRA says "nothing" about the Rules or EISA preemption, *TVA*, 437 U.S. at 189. Moreover, appropriations do not endorse unlawful programs. *Id.* at 190 ("When voting on appropriations measures, legislators are entitled to operate under the assumption that the funds will be devoted to purposes which are lawful and not for any purpose forbidden.").

Moreover, although conflicting federal statutes must be read harmoniously if possible, federal statutes need not be harmonized with *state* law. The text of the Supremacy Clause— "any State [law] to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2—"suggests that courts should not strain to find ways to reconcile federal law with seemingly conflicting state law," *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011) (plurality); *see also* Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 290–303 (2000). There is hence no presumption against preemption. *Cf. PLIVA*, 564 U.S. at 622–23. And states have no long history of regulating the fuel consumption of vehicles crossing their borders, further underscoring that no presumption against preemption is warranted. *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 761–62 (9th Cir. 2022) (en banc) (no presumption outside areas of historic state power). In any event, the presumption is a tool to construe ambiguities, but the word "maximum" is not ambiguous. State rules that go above the "maximum" federal ceiling are in direct conflict with federal law.

## IV.  Plaintiffs state an F4A preemption claim.

Plaintiffs also have stated a claim for F4A preemption. After removing federal restrictions that had "inhibit[ed] market entry," and "resulted in … operating inefficiencies and … anticompetitive pricing," Motor Carrier Act of 1980, Pub. L. No. 96-296, §§ 2–3, 94 Stat. 793, 793, Congress "sought to pre-empt state trucking regulation" as well. *Rowe*, 552 U.S. at 368, 373. And so in 1994's F4A, Congress forbade states to "enact or enforce" laws or regulations "related to a price, route, or service of any motor carrier … with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Congress's "overarching goal" was to "ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces" and so "stimulat[e] efficiency, innovation, and low prices, as well as variety and quality" in the trucking industry. *Rowe*, 552 U.S. at 371 (internal quotation marks omitted).

"There can be no doubt that when Congress adopted the [F4A], it intended to broadly preempt state laws that were 'related to a price, route or service' of a motor carrier." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1053 (9th Cir. 2009) (quoting 49 U.S.C. § 14501(c)(1)). The term "related to" is "deliberately expansive" and "conspicuous for its

1    breadth." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992) (cleaned up)

2    (construing the Airline Deregulation Act (ADA)); *Rowe*, 552 U.S. at 370–71 (applying ADA's

3    construction to F4A). Reflecting this breadth, the Supreme Court explained that a state

4    regulation is "related to a price, route, or service" of a motor carrier—and so preempted—if

5    it has "a connection with, or reference to carrier rates, routes, or services," even if the effect

6    on rates, routes, or services is "only indirect." *Rowe*, 552 U.S. at 370 (cleaned up). Only if the

7    regulation's effects are "tenuous, remote, or peripheral" does it escape preemption. *Id.* at 371

8    (internal quotation marks omitted).

9        **A.    The Rules have significant effects on prices, routes, and services.**

10       Plaintiffs have alleged that the Rules' "connection[s] with" carrier prices, routes, and

11   services are more than "tenuous, remote or peripheral." The Rules will foreseeably increase

12   prices. Complaint ¶ 248. The Rules require motor carriers to purchase substantially more

13   expensive ZEVs, *id.* ¶¶ 131, 133–135, 248; install costly charging equipment and

14   infrastructure, *id.* ¶¶ 162–168, 248; reduce the distance traveled per shift due to ZEVs' more

15   frequent, and longer, refueling stops, *id.* ¶¶ 86, 149, 159–160, 248; and schedule additional

16   vehicles and trips due to ZEVs' smaller payloads, *id.* ¶¶ 150–157, 249. These substantially

17   increased costs, and the inevitable accompanying rate hikes, are not "remote" consequences,

18   but the Rules' direct foreseeable results.

19       The Rules also require significant adjustments to motor carriers' routes. The much

20   shorter range of electric trucks (compared to internal-combustion trucks) limits the distance

21   vehicles can travel from a depot or requires rerouting to ensure access to the sparse charging

22   network. *Id.* ¶¶ 148–149, 250. The Rules also significantly affect services, limiting the freight

23   capacity motor carriers can offer, eliminating long-distance express services that cannot be

24   supported by ZEVs, and dictating how services are provided—with ZEVs. *Id.* ¶¶ 249–250.

25       In any event, California's claim that Plaintiffs have insufficiently alleged the Rules'

26   effects misunderstands Plaintiffs' burden. A complaint must include a "short and plain

27   statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),

28   not an exhaustive economic analysis. "On a motion to dismiss," the court is thus "required

1    to read the complaint charitably, to take all well-pleaded facts as true, and to assume that all

2    general allegations embrace whatever specific facts might be necessary to support them."

3    *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Plaintiffs' allegations

4    satisfy this standard. For example, Plaintiffs allege that ZEV expenses, dominated by battery

5    costs, will not decrease substantially in the foreseeable future, Complaint ¶¶ 137–139; that the

6    total cost of owning ZEVs exceeds that of internal-combustion trucks, *id.* ¶¶ 135, 169–175;

7    that state and federal subsidies do not compensate for these costs, *id.* ¶ 136, and that carriers

8    will be forced to increase customer prices, *id.* ¶¶ 247–248. California's other attacks merely

9    dispute the underlying facts, but that is irrelevant at this stage. *Peloza*, 37 F.3d at 521. And

10   California's claim that the Rules' effects are "indirect" and thus "too remote to trigger

11   preemption," Motion at 18, is foreclosed by binding precedent. *Rowe*, 552 U.S. at 370

12   (preemption "occur[s] even if a state law's effect on rates, routes or services 'is only indirect'").

13         Nor does Ninth Circuit caselaw foreclose Plaintiffs' F4A claim. *Contra* Motion at 18.

14   The Rules are a far cry from the generally applicable employment laws the Ninth Circuit has

15   found withstand F4A preemption. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021)

16   (test for classifying independent contractors); *Californians for Safe & Competitive Dump Truck*

17   *Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) (prevailing wage law). The Rules

18   challenged here do "not affect truckers solely in their capacity as members of the general

19   public," *Rowe*, 552 U.S. at 375, but "single out motor carriers," *Bonta*, 996 F.3d at 658, in

20   F4A's heartland. More analogous is *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d at

21   1053, which considered requirements that drayage providers use employees rather than

22   independent contractors as drivers. The Ninth Circuit held it was "obvious" that this type of

23   "'all or nothing' rule requiring [trucking] services be performed by certain types of employee

24   drivers and motivated by a State's own efficiency and environmental goals [is] likely

25   preempted." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018) (describing *Am.*

26   *Trucking Ass'ns*, 559 F.3d at 1053–56). For similar reasons, these "all or nothing" Rules, which

27   "requir[e] services be performed by certain types of" vehicles, are also preempted. *Id.* Finally,

28   the unpublished district court decisions cited by California, Motion at 18, are distinguishable

and, in any event, not binding.[10]

**B.    California's other objections to Plaintiffs' F4A claim lack merit.**

California again misstates the framework for a facial preemption challenge. Motion at 17; *see supra* Part II.D. There is no set of circumstances in which the Rules do not apply to motor carriers since the Rules expressly sweep motor carriers within their reach. *See, e.g.*, Cal. Code Regs. tit. 13, §§ 2014(a), 2015(a)(3); *id.* §§ 2014(b), 2015(b) (defining "[c]ontrolling party" to include a "motor carrier"). Plaintiffs' F4A claim therefore satisfies *Salerno*. Moreover, the Court can address any concerns regarding claim scope by limiting relief to motor carriers, if so desired. *Citizens United*, 558 U.S. at 331 ("The distinction" between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court").

That the Rules *might* qualify for a Clean Air Act waiver is irrelevant because all that is waived is the application "of this section," i.e., Section 209. 42 U.S.C. § 7543(b). This does not extend to the F4A, 49 U.S.C. § 14501(c)(1), which is an entirely different statute. The Clean Air Act's "general permission" for California to adopt new vehicle emissions standards (with a waiver) "must yield to [the F4A's] specific prohibition" on the subset of regulations that relate to motor carriers' prices, routes, and services. *Law v. Siegel*, 571 U.S. 415, 421 (2014). This is not a "partia[l] repea[l]" of the Clean Air Act, Motion at 15, but a recognition that "'a specific policy embodied in a later federal statute should control [the] construction'" of an earlier, more general law. *Brown & Williamson*, 529 U.S. at 143. After all, many standards that might get a waiver have no appreciable effect on motor carriers at all.

---

[10] These Rules' "all or nothing'" mandates targeted at motor carriers are nothing like the warehouse emissions program in *Cal. Trucking Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 2023 WL9622548, at *7, *28 (C.D. Cal. Dec. 14, 2023) (internal quotation marks omitted), which was a "broad law applying to hundreds of different industries" that provided numerous compliance options, including options unrelated to vehicle emissions. And the Rules' effect on carrier prices far surpasses that in *California Dump Truck Owners Ass'n v. Nichols*, 2012 WL273162 (E.D. Cal. Jan. 30, 2012). The diesel particulate filters required in *Nichols* cost only $18,000, or about 8 to 14 percent the cost of a truck. *Id.* at *3. These Rules require ZEVs costing between $230,000 and $450,000, two to three times as much as comparable diesel vehicles, Complaint ¶¶ 133–134, and so will necessarily "determine (to a significant degree) the prices" charged by motor carriers. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014).

**V.  The Attorney General is a proper defendant.**

Because the Attorney General has authority and duty to enforce the high-priority fleet rule, he is a proper defendant. *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943–44 (9th Cir. 2013). The rule's enforcement provision, Cal. Code Regs. tit. 13, § 2015.6, provides little detail, but obliquely references a long list of other California Code sections. Those sections include provisions that authorize civil penalties, Cal. Health & Safety Code §§ 39674, 42402.2, and deem negligent, knowing, or willful violations to be a criminal misdemeanor subject to fines or prison time, *id.* §§ 42400, 42400.1, 42400.2.

The civil penalties are enforceable by the Attorney General. *See id.* § 42403(a) ("The civil penalties prescribed in Sections 39674, [and] 42402.2 … shall be assessed and recovered in a civil action brought … by the Attorney General."). And the criminal penalties are enforced by district attorneys, directly supervised by the Attorney General. Cal. Gov. Code § 26500 ("district attorney is the public prosecutor" of crimes); Cal. Const. art. V, § 13 (Attorney General has "direct supervision over every district attorney"). Moreover, the Attorney General has the "duty to prosecute as a district attorney" whenever he "believes that the law is not being adequately enforced." *Association des Eleveurs*, 729 F.3d at 943–44 (citing Cal. Const. art. V, § 13). These enforcement authorities and duties render the Attorney General a proper defendant. *Id.*

**VI.  If necessary, leave to amend should be granted.**

If the Court concludes that dismissal of any claim is proper, Plaintiffs respectfully seek leave to amend, which should be "freely" granted. Fed. R. Civ. P. 15(a)(2); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## CONCLUSION

Because Plaintiffs have standing and have plausibly stated justiciable claims, Defendants' motion to dismiss should be denied.

///

///

///

Dated:  July 22, 2024                         Respectfully submitted,

                                              */s/ Michael Buschbacher*

                                              Michael Buschbacher
                                              James R. Conde
                                              Laura B. Ruppalt
                                              Boyden Gray PLLC

                                              Eric Grant
                                              Hicks Thomas LLP

                                              Counsel for Plaintiffs